# United States District Court
## STATE AND DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| V. | Case Number: |
| ABDOW MUNYE ABDOW | 09-410 AJB |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 8, 2009, in Hennepin County, in the State and District of Minnesota, defendant(s)

did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation to agents of the FBI, an agency of the United States, and in an offense involving international terrorism,

in violation of Title 18, United States Code, Section(s) 1001.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Signature of Complainant
Michael N. Cannizzaro Jr.
FBI

Sworn to before me, and subscribed in my presence,
October 9th, 2009

at St. Paul, MN
City and State

Date
The Honorable Arthur J. Boylan
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

SCANNED
OCT 13 2009
U.S. DISTRICT COURT ST. PAUL

| | | |
|---|---|---|
| DISTRICT OF MINNESOTA | ) | |
| | ) | AFFIDAVIT OF |
| STATE OF MINNESOTA | ) | MICHAEL N. CANNIZZARO, JR. |

I, Michael N. Cannizzaro Jr., being duly sworn, depose and state as follows:

## Introduction

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2004. Among my duties as an FBI Special Agent, I am responsible for the investigation of violations of federal law, including federal laws related to national security. I am currently assigned to the FBI's Joint Terrorism Task Force ("JTTF"), where my responsibilities include the investigation of international and domestic terrorism.

2. The statements contained in this affidavit are based in part on information I have learned through my own investigation; my background, training, and experience as a Special Agent, and with the JTTF; the investigation of other FBI special agents and law enforcement officers; records and other evidence obtained during the course of this investigation; and discussions with individuals as set forth herein this affidavit. Where statements of others are set forth, they are set forth in substance and in part. Because the purpose of the affidavit is to obtain a criminal complaint, I have not included all facts and details about the investigation.

1

3. On the evening of October 6, 2009 ABDOW was identified as the driver of a rental car stopped by the Nevada Highway Patrol approximately ten (10) miles North of Las Vegas. During the traffic stop, ABDOW and the four other occupants in the vehicle were asked the purpose their travel. ABDOW and the other occupants explained they were traveling to San Diego to attend a friend's wedding. During an conversation with an FBI agent, the State Trooper explained that the occupants of the vehicle gave inconsistent explanations regarding where they were staying in San Diego, how the occupants knew one another, and who was getting married at the wedding in San Diego. The State Trooper obtained consent to search the vehicle, and found one of the passengers in possession of his passport, and found $4000 in the vehicle. Three individuals in the vehicle were identified, ABDOW, Passenger #1, and Passenger #2.

4. On October 8, 2009 between 7 and 7:30 AM, two of the passengers from ABDOW'S vehicle were identified by a U.S. Customs and Border Patrol Officer as two of three individuals dropped off by a taxi cab at the United States/Mexico border at the San Ysidro border crossing, located South of San Diego. These individuals told the Officer that they would be flying from Tijuana airport to Mexico City airport and displayed airline tickets to the Officer.

5. On October 8, 2009 ABDOW was interviewed by two FBI Special Agents at his work. Prior to the interview, ABDOW was

informed that the FBI was conducting a terrorism investigation into missing Somali males from Minneapolis. He was informed that he did not have to speak with the interviewing agents, that he was not in any trouble, not under arrest, and could leave at any time. ABDOW agreed to speak with the interviewing agents.

6. During the course of the interview, ABDOW was asked about a missing persons report filed by his wife. Additionally, he was asked about the car he rented. He told the agents that he rented the car after a fight with his wife and left Minnesota for Las Vegas with his friend "Adam." Agents asked ABDOW if anyone else traveled with him and Adam. ABDOW told agents that it was just he and Adam who traveled to Las Vegas in the rental car. ABDOW said that he and Adam went to Las Vegas because they "wanted to see it." ABDOW went on to tell agents that they did not have any problems along the way, did not stop anywhere, and did not encounter anyone else during the drive.

7. ABDOW then told the agents that upon arriving in Las Vegas, Adam and ABDOW immediately turned around and returned to Minnesota. ABDOW was then asked a second time if he had any passengers in his rental car. ABDOW told the agents that he had no one else in his rental car besides Adam. The interviewing agents then explained to ABDOW that it is a crime to make false statements to federal law enforcement agents. He was then asked a third time if there were any people in the rental car with him. ABDOW told

agents he did not want to mention any names. ABDOW then said there were three additional individuals in the rental car, besides him and Adam. ABDOW identified three individuals by nicknames and said that he did not know any of these individuals' real names.

8. ABDOW then told the agents "I am talking too much," and told the agents that he did not know anything. ABDOW then denied that there were five people in the car, and said that there could have been two or four individuals in the car.

9. ABDOW was asked by agents who paid for the rental car. ABDOW told agents that he did not know who paid for the rental car. ABDOW then told the agents that he did nothing wrong and that "whatever those guys are into I'm not," and refused to elaborate any further. ABDOW was asked several more times who was with him in the car, and he responded each time, "I don't know."

10. ABDOW was asked if Adaki, Farhan and Farah were in the car with him and he responded, "I don't know." He was then asked if he went to Las Vegas, to which he again responded "I don't know." After additional questions, Agents asked ABDOW if he wanted to continue speaking, and he replied he did not know. The Agents offered to speak with him when he finished work, and he said he would "take his chances." The interview was then ended.

11. On October 9, 2009, the FBI determined that ABDOW rented a Gray Chevrolet vehicle from Avis Rental Car Company on October 5, 2009. The FBI also determined that the car was paid for with a Visa debit card issued to ABDOW.

12. Pursuant to Title 18, United Stats Code, Section 1001, it is a crime if an individual

> within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

13. I believe that there is probable cause to believe that ABDOW violated 18 U.S.C. § 1001.

14. Further your Affiant sayeth not.

<br>

MICHAEL N. CANNIZZARO, JR.
Special Agent, FBI

Subscribed to and sworn to before me this ___ day of October 2009.

THE HONORABLE ARTHUR J. BOYLAN
United States Magistrate Judge
District of Minnesota